## SCM CORPORATION

v.

### UNITED STATES (Brother International Corporation, Party-in-Interest).

**C.R.D. 77–6; Court No. 77–4–00553.**

United States Customs Court.

Aug. 15, 1977.

Stewart & Ikenson, Washington, D. C. (Eugene L. Stewart and Frederick L. Ikenson, Washington, D. C., of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C. (Glenn E. Harris, trial atty., New York City), for defendant.

Tanaka, Walders & Ritger, Washington, D. C. (H. William Tanaka, Washington, D. C., of counsel), for party-in-interest.

RE, Chief Judge:

Pursuant to the provisions of 28 U.S.C. § 255 (1970), plaintiff moves for the assignment of this action to a three-judge panel.

Section 255, which provides for "Three-judge trials" in the United States Customs Court, states:

"(a) Upon application of any party to a civil action, or upon his own initiative, the chief judge of the Customs Court shall designate any three judges of the court to hear and determine any civil action which the chief judge finds: (1) raises an issue of the constitutionality of an Act of Congress, a proclamation of the President or an Executive order; or (2) has broad or significant implications in the administration or interpretation of the customs laws.

(b) A majority of the three judges designated may hear and determine the civil action and all questions pending therein."

Since no issue of a constitutional dimension is presented, plaintiff's motion is based upon the contention that this action involves "broad or significant implications in the administration or interpretation of the customs laws."

Pursuant to 19 U.S.C. § 1516(a) (1970), plaintiff, an American manufacturer of portable electric and portable manual typewriters, filed a complaint charging that portable electric typewriters from Japan were being sold at less than fair value within the meaning of the Antidumping Act of 1921, as amended, 19 U.S.C. § 160 et seq. (1970). A broad sketch of the key provisions of this act may be helpful. See e. g., *F. W. Myers & Co., Inc. v. United States*, 376 F.Supp. 860, 862–63, 72 Cust.Ct. 219, 220–21, C.D. 4544 (1974).

Under the Antidumping Act of 1921 an American manufacturer may file a complaint with the Secretary of the Treasury to protest actual or threatened injury to an industry or the establishment of an industry. The Secretary has the duty to determine whether that class or kind of imported merchandise is being sold, or is likely to be

sold in the United States or elsewhere, at less than fair value. The act also provides for the issuance of a notice withholding appraisement in advance of a finding of sales at less than fair value, or as soon as the Secretary has reason to believe or suspect the existence of such sales. This provisional remedy precludes importers, during the pendency of an investigation, from escaping a subsequent dumping duty assessment on the imported merchandise.

If the Secretary issues an affirmative finding of sales at less than fair value, the matter is referred to the International Trade Commission. The Commission must then determine whether an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the less than fair value sales. If the Commission makes an affirmative finding of injury or likelihood of an injury, the Secretary of the Treasury must publish in the Federal Register notice of his determination as well as the findings of the Commission. Under the Antidumping Act these administrative decisions comprise the "dumping findings." As a consequence of the finding of "dumping," the imported merchandise is assessed with additional duties.

Specifically, when a dumping finding has been published, all imported unappraised merchandise described in the finding, and entered or withdrawn from the warehouse for consumption not more than 120 days before the question was presented to the Secretary, is subject to assessment of a special dumping duty. The special dumping duty is about equal to the difference between the purchase price or exporter's sales price, and the foreign market values.

In this action, after receipt of the plaintiff's complaint, the Secretary of the Treasury initiated an investigation which resulted in the publication of a determination that sales of portable electric typewriters from Japan were being or were likely to be sold at less than fair value. Thereupon the International Trade Commission conducted its investigation and rendered a negative determination, i. e., that an industry in the

United States is not being or likely to be injured, or prevented from being established, by reason of the less than fair value sales. In summary, the Commission reached a negative injury determination, and therefore no dumping finding was published.

One of the issues before the court is whether it has subject matter jurisdiction of an action brought by an American manufacturer challenging the correctness of a negative injury determination made by the International Trade Commission under the Antidumping Act of 1921, as amended.

This jurisdictional question, plaintiff's counsel asserts, is of "great significance not just to the plaintiff herein, but to the entire community of American manufacturers which have invoked or may invoke in the future the remedies provided by the Antidumping Act." Furthermore, plaintiff states that if the court decides affirmatively on the jurisdictional question, then a three-judge panel should also be impaneled to decide the substantive question whether the International Trade Commission, in reaching a negative injury determination, misconstrued and misapplied the pertinent statutes.

Defendant concurs in plaintiff's motion for a three-judge panel on the jurisdictional question, but it opposes assigning a three-judge panel to hear and determine the merits of the action. The party-in-interest, Brother International Corporation, the importer of record and consignee of the imported merchandise, agrees with defendant's position.

While defendant agrees that a three-judge panel should be designated by the chief judge to decide the jurisdictional issue, it emphasizes that plaintiff has made no showing that a decision on the merits would have "broad or significant implications in the administration or interpretation of the customs laws" within the statutory provision.

Apart from the assertion that the jurisdictional question is of great significance "to the entire community of American manufacturers," no other reason is stated in any

of the briefs of the parties to support the request for a three-judge panel.

■■■ Under the provisions of section 255(a) the chief judge is authorized to designate a three-judge panel if he finds the conditions set forth in either of its two subdivisions. Pursuant to subdivision (1) the chief judge must find that the action raises an issue of constitutionality. Under subdivision (2) he must find that the case "has broad or significant implications in the administration or interpretation of the customs laws." Clearly, therefore, a party requesting a three-judge panel must establish the facts which warrant the finding.

An application for a three-judge panel under subdivision (2) should not be granted unless special or exceptional circumstances indicate that the action has "broad or significant implications in the administration or interpretation of the customs laws." Surely it is not a sufficient reason to designate a three-judge panel that a case, by virtue of its precedential value, will affect other parties similarly situated. Even if the request is unopposed, the chief judge still must determine if the circumstances warrant impaneling a three-judge panel. See *United Merchants, Inc. v. United States*, 328 F.Supp. 1403, 67 Cust.Ct. 601, C.R.D. 71–2 (1971).

■■■ It is to be noted that 28 U.S.C. § 255 (1970) which provides for "Three-judge trials" is an exception to a primary objective of the Customs Courts Act of 1970 [1] which legislated the trial of customs cases by a single judge. That act, which modernized and strengthened the procedures before the United States Customs Court, represented a marked departure from past practice. Pre-

viously, a majority of cases were heard by a three-judge panel. The legislative history of the Customs Courts Act of 1970 clearly manifests that an objective of the act is to conserve judicial manpower and to reduce the procedural delays which resulted from the inability to dispose of all of the issues by a single judge.[2]

■ The present legislative policy is expressly set forth in 28 U.S.C. § 254 (1970) which declares that the "judicial power of the Customs Court with respect to any action, suit or proceeding shall be exercised by a single judge . . .."[3] This provision reflects the congressional intent that only upon a showing of exceptional circumstances does the 1970 act contemplate the appointment of a three-judge panel.

A comparable legislative purpose is found in the history[4] of the recent amendment governing a three-judge panel in the United States district courts [Public Law 94–381]. Of particular interest is the restriction imposed upon its use to cases of congressional or state reapportionment, or when specifically required by act of Congress.

The interpretation and application of customs laws is the function and role of the United States Customs Court, and cases of novel impression are almost commonplace. Only a few decisions need be cited as examples of the far-reaching questions determined by a single-judge court in customs cases. In *Globemaster, Inc. v. United States*, 340 F.Supp. 974, 68 Cust.Ct. 77, C.D. 4340 (1972), the issue was whether the importer could be relieved of the statutory requirement of marking the country of origin upon imported merchandise by the payment of additional duty. In *Suwannee*

---

1. Public Law 91–271.

2. See House Report No. 91–1067, 91st Cong., 2d Sess. (1970), U.S.Code Cong. & Admin.News 1970, p. 3188.

3. "§ 254. Single-judge trials.

Except as otherwise provided in section 255 of this title, the judicial power of the Customs Court with respect to any action, suit or proceeding shall be exercised by a single judge, who may preside alone and hold a regular or

special session of court at the same time other sessions are held by other judges."

4. Senate Report No. 94–204, U.S.Code Cong. & Admin.News 1976, p. 1988, on the amendment of a three-judge panel bill of the district courts, contains the comment that: "Three-judge court procedure has recently been termed by one scholar, 'the single worst feature in the Federal judicial system as we have it today.' It has imposed a burden on the Federal courts and has provided a constant source of uncertainty and procedural pitfalls for litigants."

*Steamship Company v. United States*, 354 F.Supp. 1361, 70 Cust.Ct. 327, C.R.D. 73–3 (1973), the question presented was whether this court had jurisdiction to review the discretionary authority conferred on the Secretary of Treasury in the remission of duties assessed on repairs made in foreign ports. In *American Customs Brokerage Co., Inc., a/c Astral Corp. v. United States*, 375 F.Supp. 1360, 72 Cust.Ct. 245, C.D. 4546 (1974), the court was called upon to determine what constitutes an "importation" within the meaning of the customs laws. In *Akins v. United States*, 407 F.Supp. 748, 76 Cust.Ct. 15, C.D. 4629 (1976), *aff'd*, 551 F.2d 1222, 64 CCPA ——, C.A.D. 1185 (1977), the court held that article III of the Jay Treaty of 1794, under which plaintiff claimed exemption from imposition of customs duties, was abrogated by the War of 1812 and by subsequent inconsistent legislation by Congress. In *Pasco Terminals, Inc. v. United States*, 416 F.Supp. 1242, 76 Cust.Ct. 204, C.D. 4658 (1976), *appeal pending*, the court dismissed plaintiff's suit against the imposition of dumping duties on imported sulphur on the ground that the plaintiff lacked standing. In *Voss International Corp. v. United States*, 78 Cust.Ct. ——, C.D. 4698 (1977), the court held that the determination of injury by the Tariff Commission [now the International Trade Commission], achieved by a two to two vote of the five members of the Commission who attended the meeting, was valid under the provisions of 19 U.S.C. § 160(a) (1970). Indeed, cases raising issues involving the interpretation of the Antidumping Act of 1921 have been resolved exclusively by a single judge of this court. Some examples are: *Matsushita Electric Industrial Company, Ltd., et al. v. United States Treasury Department et al.*, 67 Cust.Ct. 328, C.D. 4292 (1971), *aff'd*, 485 F.2d 1402, 60 CCPA 85, C.A.D. 1086 (1973); *F. W. Myers & Co., Inc. v. United States, supra; Azufrera Panamericana, S. A. v. United States*, 74 Cust.Ct. 97, C.D. 4591 (1975); *Pasco Terminals, Inc. v. United States, supra*; and *Voss International Corp. v. United States, supra.* Many other examples could be cited.

In the absence of a showing of special factors or circumstances that warrant the designation of a three-judge panel, the judicial power of the Customs Court shall be exercised by a single judge.

The plaintiff's motion that the chief judge designate a three-judge panel in this action is denied.