SCM CORPORATION, Plaintiff,

v.

UNITED STATES, Defendant,

Brother International Corporation,
Party-in-Interest.

Court No. 77–4–00553.

United States Court of International
Trade.

July 1, 1981.

Frederick L. Ikenson, Washington, D. C., for plaintiff SCM Corp.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Dept. of Justice, Civil Division, Commercial Litigation Branch, Washington, D. C., David M. Cohen, Director, Commercial Litigation Branch; (Sheila N. Ziff, New York City, on briefs), for defendant United States.

Tanaka, Walders & Ritger, Washington, D. C. (H. William Tanaka, Lawrence R. Walders and Wesley K. Caine, Washington, D. C., on briefs), for party-in-interest Brother International Corp.

## MEMORANDUM AND ORDER

NEWMAN, Judge:

Plaintiff ("SCM")—a domestic portable typewriter manufacturer—challenges, pur-

suant to 19 U.S.C. § 1516(c) (1976), the negative antidumping injury determination made on June 19, 1975 by the United States International Trade Commission ("Commission") in the case of *Portable Electric Typewriters From Japan*, U.S.I.T.C. Public 732, Investigation No. AA1921–145 (40 FR 27079 (1975)). Brother International Corporation ("Brother")—an importer of portable electric typewriters ("PETs") from Japan and the consignee of New York, N.Y. Consumption Entry No. 77–302804, the immediate subject of the instant action—appears as the party-in-interest pursuant to 19 U.S.C. § 1516(f).

Presently before me are: plaintiff's motion for judgment directing the Secretary of Commerce to publish a finding of dumping covering PETs from Japan; defendant's cross-motions, in the alternative, to dismiss on the ground of mootness, to stay the instant proceedings pending final disposition of the issues involved in *Nakajima All Co., Ltd. v. United States*, Court No. 80–6–00933, and *Silver Reed America, Inc. v. United States*, Court No. 80–6–00934, or to remand the instant proceedings to the Commission for reconsideration of its negative injury determination upon the basis of the record in the instant matter supplemented by the record in *Portable Electric Typewriters From Japan*, Investigation No. 731–TA–12, 45 FR 30186 (1980), a subsequent injury investigation involving PETs from Japan wherein the Commission made an affirmative determination; and also a cross-motion of the party-in-interest for summary judgment (which is a renewal of a prior cross-motion).[1]

## I.

The pertinent history of this litigation follows:[2]

In its Investigation No. AA1921–145, the Commission determined, by a three to two vote with one abstention, that an industry in the United States is not being or likely to be injured or prevented from being established by reason of PETs from Japan sold at less than fair value ("LTFV") within the meaning of the Antidumping Act, as amended (19 U.S.C. § 160 *et seq.* (1970 & Supp. V 1975).[3]

Although the imported articles found to be sold at LTFV by Treasury[4] and covered by the Commission's notice of investigation were PETs, for purposes of identifying "what is the industry most likely to be affected" by the imported articles, the majority considered, alternatively, the facilities devoted to the production of all portable typewriters (both electric and manual) or the facilities devoted to the production only of PETs. The majority found that in either instance the affected domestic industry was SCM, the sole United States producer of portable typewriters, both electric and manual.

While acknowledging that imports of PETs from Japan sold at LTFV had obtained a significant share of the United States market for portable typewriters during the period of the Treasury Investigation (October 1973 through March 1974), the majority concluded that "imports penetration alone is not an adequate basis for determining injury" (40 FR 27080). Chairman Leonard considered "that import penetration indicates injury only when it is established that the penetration is at the expense of the

---

1. The parties have filed twelve briefs relating to the motion and cross-motions presently before me, the latest of which was submitted on March 16, 1981.

2. For a more complete history of this action see 80 Cust.Ct. 226, C.R.D. 78–2, 450 F.Supp. 1178 (1978) and 84 Cust.Ct. ——, C.R.D. 80–2, 487 F.Supp. 96 (1980). See also 79 Cust.Ct. 163, C.R.D. 77–6, 435 F.Supp. 1224 (1977), denying plaintiff's motion for assignment of this case to a three judge panel.

3. Chairman Leonard and Commissioners Bedell and Parker determined in the negative, while Commissioners Moore and Ablondi determined in the affirmative. Vice-Chairman Minchew abstained from voting.

4. The authority for administering the antidumping law was transferred from the Secretary of the Treasury to the Secretary of Commerce, effective January 2, 1980. *Reorganization Plan No. 3 of 1979*, 44 FR 69273 (1979); *Exec. Order 12188*, 45 FR 989 (1980).

domestic industry *and causes lost sales* " (40 FR 27080, fn.2) (Emphasis added). Implicitly, therefore, Chairman Leonard found there were no lost sales. However, the majority's Statement of Reasons reveals no specific finding concerning lost sales. The dissenting Commissioners, on the other hand, found that SCM "has clearly lost a considerable share of the market and *consequently lost considerable sales* " (40 FR 27081) (emphasis added).

The majority further found that, other than market penetration, none of the tests of injury applied in this case showed that an industry in the United States is being or is likely to be injured. The other tests indicated that the domestic industry had prospered, and was likely to continue to grow and expand notwithstanding the fact that it did not produce certain types of low end PETs.

In February 1979, plaintiff filed a motion for summary judgment contending that several aspects of the Commission's negative injury determination were erroneous as a matter of law, and that an affirmative injury determination should have been made. Thereupon, defendant and the party-in-interest filed cross-motions for summary judgment.

On March 7, 1980 Chief Judge Re issued an opinion, finding certain deficiencies in the majority's Statement of Reasons for the determination under review. *SCM Corporation v. United States (Brother International Corporation, Party-in-Interest)*, 84 Cust.Ct. ——, C.R.D. 80–2, 487 F.Supp. 96 (1980). Chief Judge Re stated, *inter alia*:

Congress has not only directed the ITC to state its determinations but has also required the agency to *explain* those determinations. The statutory requirements of "a statement of reasons," imposed by the 1958 amendments to the Antidumping Act, and the "complete statement of findings and conclusions" imposed by the Trade Act of 1974, are clearly consistent with applicable decisional law. For the ITC these requirements are specifically mandated by the pertinent statutory provisions.

The ITC determination in this case nominally includes the majority's "Statement of Reasons." In substance, however, the statements are really mixed conclusions of ultimate facts and statutory interpretation, rather than reasons. The ITC has stated the conclusions which presumably are the result of its reasoning, but it has neither supplied nor articulated the reasons which support those conclusions.

An illustration is the conclusion that significant market penetration alone is not an adequate basis for determining injury. This is a major policy determination with broad and significant implications in the interpretation and administration of the antidumping law. Clearly, Congress intended the ITC to develop and refine the very general concept of injury as it is applied to individual cases. This responsibility is not adequately discharged in a case in which the ITC determination is neither clearer nor more specific than the statutory language itself.

*When the ITC fails to delineate and make explicit the basis for the conclusions, by articulating a rational connection between the facts found and the discretionary action taken, the court cannot decide, as it must, whether the ITC has exercised a reasoned discretion consistent with legislative intent.*

In order for the court to perform its function of judicial review, this proceeding is stayed, and the ITC will be afforded an additional opportunity to supply this court with the reasons supporting its conclusions * * *. [487 F.Supp. at 108.] [Emphasis added.]

Thus, the Court in essence did not grant or deny the motion or cross-motions for summary judgment. Rather, such motions were held in abeyance and the following direction was issued:

it is ordered that this proceeding be stayed for such necessary time, not to exceed 90 days, as the ITC may require to supply the court with a more specific and explicit statement of reasons for the conclusions that: (1) The affected "industry"

was limited to, alternatively, the facilities devoted to the production of all portable typewriters, or, the production of portable electric typewriters; and (2) significant market penetration by less than fair value imports alone is not an adequate basis for determining injury. [*id.*]

## II.

While this action was pending, plaintiff filed a petition on April 9, 1979 for the initiation of a second antidumping proceeding covering PETs from Japan containing updated information. Subsequently, on March 18, 1980 the Secretary of Commerce issued an affirmative determination of sales at LTFV in that proceeding (45 FR 18416 (1980)); on May 7, 1980 the Commission announced an affirmative injury determination in the case of *Portable Electric Typewriters From Japan*, U.S.I.T.C. Public 1062, Investigation No. 731–TA–12, 45 FR 30186 (1980); and on May 9, 1980 the Secretary of Commerce published an antidumping duty order (45 FR 30618 (1980)).

## III.

Consequently, we are faced with the following scenario:

In its first PET investigation, the Commission on June 19, 1975 made a negative injury determination;

On March 7, 1980 Chief Judge Re remanded this action to the Commission to "supply the Court with a more specific and explicit statement of reasons";

On May 7, 1980 in its second PET investigation (relative to the second petition) the Commission announced an affirmative injury determination, and an antidumping order followed on May 9, 1980;

On June 5, 1980 defendant moved to dismiss the instant action on the ground that it was rendered moot by the antidumping duty order issued on May 9, 1980. Alternatively, defendant moved for an extension of time within which the Commission could comply with the remand order in C.R.D. 80–2;

On July 10, 1980 plaintiff filed a memorandum in opposition to defendant's motion to dismiss, arguing that the case was not moot for two reasons: (a) the new antidumping duty order on which defendant's mootness argument was based had been challenged in this Court by Japanese import-export interests, and as long as that order or any subsidiary determination is susceptible of being judicially overturned, the subject Court proceeding is not moot; (b) moreover, interested parties could in the future attempt to obtain reconsideration of the antidumping duty order on the basis of an alleged change of circumstances, and in such event, issues raised in the subject Court proceeding could once again become central to the determination which the Commission would necessarily make;

On October 2, 1980 Chief Judge Re entered an unpublished order which denied defendant's motion to dismiss on the ground of mootness, and granted the Commission 30 days from that date in which to comply with the remand order. That order of October 2, 1980 reassigned the present case to the writer.

In this setting, Chairman Alberger, writing for the Commission, mailed to me on or about October 31, 1980 an undated letter reading in pertinent part (at 2):

On October 1, 1980, Chief Judge Re denied the Commission's motion [to dismiss], transferred this case to Your Honor [the writer], and ordered that the Commission comply with the March 7 order within 30 days. With all due deference, the Commission is unable to provide the court with further explanation for the conclusions reached by the Commission majority in *Portable Electric Typewriters From Japan*, AA 1921–145, because only one of the three Commissioners composing the majority remains with the Commission.

The Commission is a decision-making body which must vote on a determination of injury or non-injury. Those Commissioners agreeing on a determination must together write the opinion expressing the reasons for reaching that determination.

It would be impossible for the remaining member of the majority to provide an accurate response to the Court's request without the input of the two former Commissioners.

Again, I regret that circumstances are such that the Commission is unable to provide further explanation for the conclusions reached by the Commission majority in *Portable Electric Typewriters From Japan*, AA 1921–145.

### IV.

Chairman Alberger's letter, albeit courteous, nonetheless advances an untenable reason for the Commission's failure to comply with the Court's remand order.

As indicated *supra*, plaintiff's motion for summary judgment dated February 13, 1979 and the cross-motions by defendant and the party-in-interest were neither granted nor denied when, in C.R.D. 80–2, the Court remanded the case to the Commission. As in its previous motion for summary judgment, plaintiff now moves for a judgment holding that the Commission erred as a matter of law in making a negative injury determination, and further, for a judgment directing the appropriate administrative official to publish a finding of dumping covering PETs from Japan.

Specifically, plaintiff contends that the Commission erred as a matter of law "in not reaching an affirmative injury determination in view of the finding of significant market penetration, particularly when that penetration was accomplished primarily by underselling the domestic product via LTFV pricing, and when that penetration resulted in a loss of sales by the domestic industry." Plaintiff additionally argues that the Commission erred as a matter of law: by making the health of the domestic industry a relevant consideration; by finding there was no price suppression; and by not defining the relevant domestic industry as plaintiff's facilities devoted to producing portable manual typewriters or low-end portable electric typewriters.

### V.

Defendant's contention that this action is moot, as previously noted, was considered and rejected by Chief Judge Re in denying defendant's motion to dismiss on October 2, 1980. That ruling will now be adhered to as the law of the case, and accordingly defendant's cross-motion to dismiss is denied.

### VI.

The negative injury determination was rendered and a single Statement of Reasons written by (then) Chairman Leonard, (then) Commissioner Parker, and Commissioner Bedell. By March 7, 1980, date of the remand order, Commissioner Bedell was the only member of the majority remaining on the Commission. The Commission has now taken the position (through Chairman Alberger in his letter to me) that since Commissioner Bedell is the only one of the three Commissioners who constituted the majority and who is still a member of the Commission, the present Commission cannot provide a "more specific and explicit statement of reasons," as required by the remand order. However, as may be observed from plaintiff's contentions, the questions raised in the remand order of March 7, 1980, concerning the affected domestic industry and market penetration, are central to a determination of whether the Commission's negative determination was correct.

### VII.

I find that the reasons submitted by the Commission for its inability to comply with the Court's remand order of March 7, 1980 are legally invalid. The party-in-interest agrees with this conclusion. Indeed, it is of course not uncommon for the personnel constituting a court panel or an administrative tribunal to change periodically. Clearly, the Commission, like this Court, is a continuing institution, regardless of changes in its membership. To comply with the Court's remand order, the present Commissioners could have and should have familiarized themselves with the record before them. If after doing so, they remained unable to

provide any reasons for the matters raised in the remand order or if they were of the view that the conclusions questioned were incorrect, the Commission should have so advised the Court.

Defendant's contention, that the remand order was impossible to carry out because it required an explanation by each of the individual commissioners comprising the majority, is entirely without merit. The remand order plainly required an institutional response (by the Commission) rather than responses by each of the individual Commissioners participating in the majority's determination.

The short of the matter is that the contested determination was an institutional decision, and as such, can be explained or corrected on remand by the Commission, notwithstanding that the membership of the Commission has changed since the time the determination was originally reached. Hence, Chairman Alberger's response on behalf of the Commission, although undoubtedly written in good faith, provided a legally insufficient reason for the Commission's inability to comply with the Court's remand order.

■ Accordingly, it is ordered that this proceeding be stayed for such necessary time as the Commission may require, not to exceed 90 days:

a. to supply this Court with a more specific and explicit Statement of Reasons in compliance with the remand order entered by the Court on March 7, 1980;

b. In addition to the questions raised by the previous remand order, the Commission is directed—within the time specified—to reconsider and advise this Court whether there was price suppression, after comparing the wholesale price indexes for portable typewriters and office (electric) typewriters; or to supply this Court with specific reasons why such basis for comparison is inappropriate;

c. Finally, the Commission shall make and report to this Court a specific finding of fact respecting whether there were lost sales as a consequence of market penetration by the Japanese LTFV imports.

It is further ordered that all of defendant's alternative cross-motions are denied.