The FELDSPAR CORPORATION, Plaintiff,

v.

UNITED STATES, Defendant,

and

Unimin Corporation, Defendant–Intervenor.

Court No. 92–07–00425–S.

United States Court of International Trade.

June 23, 1993.

Crowell & Moring, Barry E. Cohen and M. Roy Goldberg, Washington, DC, for plaintiff.

Office of Gen. Counsel, U.S. Intern. Trade Com'n, Lyn M. Schlitt, Gen. Counsel, James A. Toupin, Asst. Gen. Counsel and Robin L. Turner, Washington, DC, for defendant.

Unimin Corp., Andrew G. Bradley, New Canaan, CT, for defendant-intervenor.

## OPINION AND JUDGMENT

CARMAN, Judge:

Pursuant to Rule 56.1 plaintiff moves for judgment upon the agency record. Plaintiff contests the final negative antidumping determination of the International Trade Commission, in its investigation in *Nepheline Syenite from Canada*, 57 Fed.Reg. 19,439 (1992). This action is brought pursuant to 19 U.S.C. § 1516(a) (1988) and 28 U.S.C. § 1581(c) (1988).

The U.S.-Canada Free Trade Agreement, as implemented by 19 U.S.C. § 1516a(g) (1988), provided the parties with an opportunity for review by special binational panels due to the fact this case involves Canadian merchandise. However, neither Canada nor the U.S. requested a binational panel review of plaintiff's challenge to the agency determination below. Therefore, pursuant to 19 U.S.C. § 1516a(g)(3), the action was commenced in the Court of International Trade.

## BACKGROUND

In response to a petition filed by Feldspar, the ITC conducted a preliminary investigation in which it determined that there was a reasonable indication that a regional industry in the U.S. was materially injured by reason of allegedly less-than-fair-value (LTFV) imports of nepheline syenite from Canada. *Nepheline Syenite from Canada*, USITC Pub. 2415, Inv. No. 731-TA-525 (1991). The Department of Commerce subsequently published its preliminary and final determinations that imports from Canada of nepheline syenite were being or were likely to be sold in the U.S. at LTFV. *Preliminary Determination of Sales at Less Than Fair Value: Nepheline Syenite from Canada*, 56 Fed. Reg. 67,061 (1991); *Final Determination of Sales at Less Than Fair Value: Nepheline Syenite from Canada*, 57 Fed.Reg. 9,237 (1992).

Following Commerce's determination, the ITC conducted a final investigation, unanimously determining that a regional industry in the U.S. was not materially injured or threatened with material injury by reason of LTFV imports of nepheline syenite from Canada.[1] The opinions of the ITC are set forth in *Certain Nepheline Syenite from Canada*, USITC Pub. 2502 (April 1992), Inv. No. 731-TA-525 (*Nepheline Syenite Opinion*).

The imported product, nepheline syenite, is produced in Canada by defendant-intervenor, Unimin Corporation, the sole Canadian producer. The ITC has defined the product as

a coarse crystalline rock consisting principally of feldspathic minerals (i.e., sodium-potassium feldspars and nepheline), with little or no free quartz, and whose typical mean value passing through ASTM E-11 mesh sieve no. 40 and retained on ASTM E-11 mesh sieve no. 200 (when solely said two sieves are used) is no less than 70 percent by weight.

*Nepheline Syenite Opinion* at 6 (footnote omitted). Although nepheline syenite is not produced in the U.S., the ITC found that the domestic "like products" were aplite and glass-grade feldspar. *Id.* at 11. Both of these domestic products are used in the same way as nepheline syenite in commercial

---

1. The ITC's final negative injury determination consists of three separate opinions: by Commissioners Brunsdale, Crawford, Watson, and Nuzum; by Commissioner Nuzum separately providing additional views on a national industry; and by Commissioners Rohr and Newquist providing a separate opinion on a regional and a national industry.

glass-making as a source of alumina.[2] Based on its like product determination, the ITC concluded that the domestic industry consisted of U.S. producers of glass-grade feldspar and aplite. *Id.* at 11 and 45.

The Commission determined that a regional market that satisfied the requirements of 19 U.S.C. § 1677(4)(C) (1988) existed, and this region was labelled the "northeastern/northcentral region and Puerto Rico." *Id.* at 11–12, and 46. This region consisted of Puerto Rico and the following states: Connecticut, Illinois, Indiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Wisconsin, Virginia and West Virginia. *Id.* The regional industry consisted of a single domestic firm, the Feldspar Corporation, which accounted for 100 percent production at two facilities within the "northeastern/northcentral region and Puerto Rico." Additionally, four of the Commissioners found that the Canadian imports of nepheline syenite were sufficiently concentrated within the designated region to warrant consideration of material injury or threat of material injury to a regional injury by reason of the subsidized or dumped imports.

The ITC assessed the condition of the regional industry based on the factors set forth in 19 U.S.C. § 1677(7)(C)(iii) (1988). Four of the Commissioners did not reach a conclusion on the condition of the regional industry separate from whether it was suffering material injury by reason of subject imports. *Id.* at 21. Two Commissioners determined that the regional producers had experienced overall declines in production, shipments, consumption and profitability in the face of increases in costs of goods. These two Commissioners concluded that the regional industry was experiencing material injury. *Id.* at 53. However, the two Commissioners ultimately concluded that the material injury was not by reason of the LTFV imports.

The other four Commissioners analyzed whether there was material injury to the regional industry by reason of the LTFV imports, based on the factors set forth in 19 U.S.C. § 1677(7)(B)–(C). After conducting a thorough analysis, the Commission concluded that despite the volume of imports into the region, there was no indication that LTFV imports were depressing or suppressing domestic prices or reducing domestic volume. Therefore, the Commissioners unanimously determined that the regional industry was not materially injured by reason of LTFV imports. Similarly, the Commission unanimously concluded after carefully examining the factors set forth in 19 U.S.C. § 1677(7)(F)(i)(I)–(X), that the regional industry was not threatened with material injury by reason of the LTFV imports. *Id.* at 27, 29, 58, 61.

## CONTENTIONS OF THE PARTIES

Plaintiff claims that the ITC's final determination, that the domestic industry is not experiencing material injury or threatened with material injury by reason of LTFV sales of nepheline syenite into the region, is unsupported by substantial evidence and is not otherwise in accordance with law. Plaintiff argues the Commission either erroneously concluded that the domestic industry was not materially injured, or failed to make any injury determination at all.

Secondly, Feldspar contends the Commission misinterpreted the appropriate statute, 19 U.S.C. § 1677(7)(C)(i). Plaintiff interprets the statute as allowing significant import volume standing alone to be a factor indicative of injury.

Next, plaintiff maintains evidence on the record shows prices of LTFV imports were depressing or suppressing domestic prices. Feldspar claims the evidence demonstrates that plaintiff was forced to lower its prices to customers in order to retain their business. Furthermore, plaintiff contends that sales of nepheline syenite directly impacted the domestic industry as evidenced by the numerous changes in buyers' alumina sources which were made during the three year peri-

---

**2.** Alumina contributes beneficial qualities to glass composition such as increased resistance to scratching and breakage, improved thermal en- durance and increased chemical durability. *See Nepheline Syenite Opinion* at I–8.

od of investigation. According to plaintiff, the ITC should have, but did not, conduct an inquiry into the nature of the competition between nepheline syenite and aplite and glass-grade feldspar. Instead, plaintiff contends, the Commission relied on non-price factors to explain the injury suffered by domestic producers.

The Commission maintains that its final determination is supported by substantial evidence on the record and is otherwise in accordance with law. The Commission contends it properly conducted its investigation, weighed the evidence resulting from that investigation, and made its determination in accordance with the requirements of the statute.

The Commission's determination of like product and its finding of a regional industry are not in dispute.

### STANDARD OF REVIEW

A final negative antidumping determination by the ITC will be held unlawful by this Court if it is unsupported by substantial evidence on the record or is otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana, S.A. v. United States,* 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986), *aff'd,* 5 Fed.Cir. (T) 77, 810 F.2d 1137 (1987) (citations omitted). "[T]he court may not substitute its judgment for that of the [agency] when the choice is 'between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo* * * *'". *American Spring Wire Corp. v. United States,* 8 CIT 20, 22, 590 F.Supp. 1273, 1276 (1984), *aff'd,* 760 F.2d 249 (Fed.Cir.1985) (citations omitted). "It is within the Commission's discretion to make reasonable interpretations of the evidence and to determine the overall significance of any particular factor or piece of evidence." *Maine Potato Council v. United States,* 9 CIT 293, 300, 613 F.Supp.

1237, 1244 (1985) (citing S.Rep. 249, 96th Cong., 1st Sess. at 74–75 (1979), U.S.Code Cong. & Admin.News 1979, p. 381).

### DISCUSSION

■ Once the ITC determined that a regional industry analysis was appropriate and that there was in fact a concentration of subsidized or dumped imports into the regional market,[3] it was required to determine: "if the producers of all, or almost all, of the production within that market [were] being materially injured or threatened by material injury, or if the establishment of an industry [was] being materially retarded, *by reason of the subsidized or dumped imports.*" 19 U.S.C. § 1677(4)(C) (emphasis added).

"Material injury" is defined as "harm which is not inconsequential, immaterial, or unimportant." 19 U.S.C. § 1677(7)(A). The factors that the Commission shall consider in analyzing the issue of material injury are set out in 19 U.S.C. § 1677(7)(B)(i) as follows:

(I) the volume of imports of the merchandise which is the subject of the investigation,

(II) the effect of imports of that merchandise on prices in the United States for like products, and

(III) the impact of imports of such merchandise on domestic producers of like products, but only in the context of production operations within the United States.

The statute also states that the ITC "may consider such other economic factors as are relevant to the determination regarding whether there is material injury by reason of imports." 19 U.S.C. § 1677(7)(B)(ii). The ITC must not only state its determinations, but must also *explain* those determinations. *SCM Corp. v. United States,* 2 CIT 1, 3, 519 F.Supp. 911, 913 (1981) (citations omitted). In this case, the Commission has based its determination on substantial evidence on the record and has fully explained the basis for the determination.

The Commission analyzed numerous factors in evaluating the condition of the indus-

---

**3.** Commissioners Brunsdale and Crawford did not find it necessary to determine whether the import concentration test was met, because they

do not regard it as a condition precedent to an analysis of material injury to a regional industry. *Nepheline Syenite Opinion* at 16 n. 48.

try, such as U.S. consumption, production, shipments, capacity utilization, employment, wages, financial performance, capital investment, and research and development expenses. *Nepheline Syenite Opinion* at 18. The Commission found that during the period of investigation, the volume of imports, the regional market share held by the subject imports, and the volume of domestic shipments all declined. *Id.* at 22. Furthermore, the extensive pricing data in the record showed that the import prices and domestic prices in the region increased during the period of investigation.

Following the requirements of 19 U.S.C. § 1677(7)(B)(i), the Commission next analyzed the impact of the imports on the domestic producers. The Commission found that glass-grade nepheline syenite, glass-grade feldspar and aplite are not readily substitutable due to varying chemical compositions, differences in transportation costs, and potential production and quality problems that might result from the use of a different alumina source. *Id.* at 24–25. The ITC found that the record did not substantiate the allegations of either lost sales or lost revenues within the region. In conclusion, the Commission stated that "despite the volume of imports into the [northeastern/north-central region and Puerto Rico], there is no indication that LTFV imports' prices are depressing or suppressing domestic prices or reducing domestic volume." *Id.* at 26.

In analyzing whether there was a threat of material injury to the regional industry by reason of the subject imports, the Commission determined that there had not been a rapid increase in market penetration in the region by Unimin. *Id.* at 27. The record indicated the volume of Unimin's exports to the U.S. market had been steadily declining throughout the period of investigation, and Unimin's non-U.S. markets accounted for an increasingly larger share of its shipments. Furthermore, there was nothing in the record to suggest that there would be a change in Unimin's consistent patterns of trade in the near future. *Id.* at 28. Imports did not have an adverse impact on domestic prices, and there was no indication in the record that imports would be any more likely to

affect prices in the near future. Therefore, based on its analysis and discussion of the relevant factors, the Commission concluded that the regional industry was not threatened with material injury by reason of the LTFV imports. *Id.* at 29.

Plaintiff, however, argues that four of the Commissioners violated the statutory requirements of 19 U.S.C. § 1677(4)(C) by not making a separate injury determination apart from their ultimate conclusion that there was no material injury by reason of LTFV imports. The Court holds that the Commission followed the statutory requirements of 19 U.S.C. § 1677(4)(C). The relevant part of the statute reads as follows:

> In such appropriate circumstances, *material injury*, the threat of material injury, or material retardation of the establishment of an industry *may be found to exist with respect to an industry . . .* if there is a concentration of subsidized or dumped imports into such an isolated market and *if the producers* of all, or almost all, of the production within that market *are being materially injured* or threatened by material injury, or if the establishment of an industry is being materially retarded, *by reason of the subsidized or dumped imports.*

19 U.S.C. § 1677(4)(C) (emphasis added).

In support of this argument, plaintiff points to language in *Iwatsu Elec. Co. v. United States*, 15 CIT 44, ——, 758 F.Supp. 1506, 1510 (1991): "The [C]ourt will examine injury and causation separately. That is the framework used in the final affirmative determinations, and such a framework has been accepted previously by the [C]ourt." This language does not mandate a certain analysis to be used by the ITC in negative final determinations, but rather acknowledges the analysis used by the Commission in an affirmative final determination based on 19 U.S.C. § 1673d(b)(1) (1988).

Plaintiff maintains the legislative history to the Trade Agreements Act of 1979 supports its position by requiring the ITC to include in its determinations a statement of findings of fact on all material issues including the factors set forth in 19 U.S.C. § 1677(7), *citing* H.R.Doc. No. 153, Part II, at 38 (1979), *re-*

*printed in* 1979 U.S.S.C.A.N. 665, 694. Plaintiff erroneously claims that "material injury" is one of the "factors" listed in 19 U.S.C. § 1677(7). This section is entitled "Material injury," and lists factors relevant to making a determination of material injury, such as volume, price and impact on the affected domestic industry. The ITC made statements of findings of fact concerning these listed factors in its determination as the legislative history requires.[4] *See Id.* at 22–24, 36–40, 54–57.

Plaintiff also argues the Commission misinterpreted 19 U.S.C. § 1677(7)(C)(i) by not treating import volume as a factor indicative of injury. Plaintiff's argument is without merit. Section 1677(7)(C)(i) provides as follows:

> In evaluating the volume of imports of merchandise, the Commission shall consider whether the volume of imports of the merchandise, or any increase in that volume, either in absolute terms or relative to production or consumption in the United States, is significant.

In accordance with the statute, the Commission made factual findings and evaluated the import volume findings with respect to their effect on domestic volume and domestic price. *See* 19 U.S.C. § 1677(7)(C)(i)–(ii). The majority of the Commission concluded that "despite the volume of imports into the [northeastern/northcentral region and Puerto Rico], there is no indication that LTFV imports' prices are depressing or suppressing domestic prices or reducing domestic volume." *Nepheline Syenite Opinion* at 26. This Court has emphasized in prior decisions the importance of not relying on a single isolated factor in making a determination: "[w]hatever the importance of a particular factor, the ITC is obligated 'to consider and weigh a number of other pertinent economic and financial criteria, and consider all the facts and circumstances....'" *American Spring Wire Corp.,* 8 CIT at 25, 590 F.Supp. at 1279 *(quoting SCM Corp. v. United States,*

4 CIT 7, 13, 544 F.Supp. 194, 199 (1982)) (other citation omitted). The Court holds that the Commission properly considered the import volume data and provided an appropriate analysis in its opinion.

The next argument plaintiff puts forth is that the Commission ignored evidence on the record showing that the imports had in fact led to domestic price depression and suppression. The Court, however, holds that the Commission's conclusions regarding pricing information are supported by the record. Despite the fact the Commission found "price information to be of limited value in making [its] determination," the Commission provided a complete price comparison analysis. *See Nepheline Syenite Opinion* at 22–26, 37, 55–56. The Commission assessed conditions of trade and competition, as well as the role of price and the LTFV imports in the market. It found that glass-grade nepheline syenite, glass-grade feldspar and aplite were not readily substitutable and that minor price differences did not appear to be a strong incentive to shift alumina sources. The Commission conducted a reasonable analysis and based its conclusions on substantial evidence in the record.

The Court need not address the issue raised by plaintiff in its brief regarding the dumping margin as determined by Commerce. The Court severed and dismissed that aspect of the case, *Feldspar Corp. v. United States,* 16 CIT ——, 809 F.Supp. 971 (1992), and denied plaintiff's motion for reconsideration of that dismissal on February 2, 1993.

### CONCLUSION

After considering all of plaintiffs' arguments, the Court holds that the Commission's negative final determination was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Therefore, the Court denies plaintiff's motion and sustains the International Trade Com-

---

**4.** Plaintiff claims the Commission actually made a finding that the domestic industry was not materially injured, *citing Nepheline Syenite Opinion* at 17 n. 48. However, the footnote plaintiff points to merely explained the position of two Commissioners regarding the issue of import concentration. The statement made within the footnote concerning material injury was in reference to the Commission's final negative determination of no material injury *by reason of subject imports.*

mission's negative final determination in *Nepheline Syenite from Canada*, 57 Fed. Reg. 19,439 (1992). This action is dismissed.

### ORDER

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED** that Plaintiff's motion is denied; and it is further

**ORDERED** that the International Trade Commission's final negative antidumping determination in *Nepheline Syenite from Canada*, 57 Fed.Reg. 19,439 (1992) is sustained; and it is further

**ORDERED** that the action is dismissed.