**TRENT TUBE DIVISION, CRUCIBLE MATERIALS CORPORATION; Armco–Specialty Steel Division; Damascus Tubular Products; Allegheny Ludlum Corporation; Carpenter Technology Corporation; and United Steelworkers of America, AFL–CIO–CLC, Plaintiffs,**

v.

**UNITED STATES, Defendant,**

and

**Avesta Sandvik Tube AB and Avesta Stainless, Inc., Defendants–Intervenors.**

**Court No. 87–12–01189.**

United States Court of International Trade.

July 6, 1990

---

Collier, Shannon, Rill & Scott, Kathleen Weaver Cannon and Nicholas D. Giordano, Washington, D.C., for plaintiffs.

James A. Toupin, Asst. Gen. Counsel, Office of the Gen. Counsel, United States Intern. Trade Com'n, William T. Kane, Washington, D.C., for defendant.

Freeman, Wasserman & Schneider, Patrick C. Reed and Jack Gumpert Wasserman, New York City, for defendants-intervenors.

## OPINION

CARMAN, Judge.

On June 20, 1990, the Court issued *Trent Tube v. United States*, Slip Opinion 90–58 and order, —— CIT ——, which remanded to the International Trade Commission (ITC) the determination of Chairman Liebeler in *Stainless Steel Pipes and Tubes from Sweden*, USITC Pub. No. 2033 (Final) (Nov.1987). On June 29, 1990, defendant-intervenors Avesta Sandvik Tube AB, *et al.* brought an order to show cause and a motion for an ex parte stay of the Court's remand order of June 20, 1990. Defendant-intervenors contended that the Court made a mistake in law when it erroneously relied on 19 U.S.C. § 1677 as amended in 1988 instead of 19 U.S.C. § 1677 (1982) in Slip Opinion 90–58. Defendant-intervenors also moved for rehearing, amendment or alteration of the order and certification for appeal of the order to the Court of Appeals for the Federal Circuit. The Court granted defendant-intervenors' motion for a stay until oral argument and ordered a hearing on defendant-intervenors' application. On the return date, July 3, 1990, plaintiffs moved for a preliminary injunction to enjoin the liquidation of the merchandise in question and filed papers opposing defendant-intervenors' motions and the granting of the stay. The Court heard from all parties at the hearing and determined as follows:

The Court directed the ITC to use 19 U.S.C. § 1677(7)(B)(iii) (1982) and 19 U.S.C. § 1677(7)(C)(iii) (1982) in carrying out its remand.

The Court found that it mistakenly used 19 U.S.C. § 1677 as amended in 1988 in its analysis when it should have employed 19 U.S.C. § 1677 (1982). The Court found

that its analysis in slip opinion 90–58 was not affected by the citation to the 1988 section and that its analysis applied in the same manner as though the Court had cited the 1982 section as the basis for its determination. The Court found that although it committed error, the result was not a material error of law sufficient to grant a rehearing.

The Court announced that it would issue an errata sheet as to Slip Opinion 90–58 and would issue the instant Slip Opinion further outlining the rationale of this decision.

The Court denied a rehearing of Slip Opinion 90–58.

The Court denied certification of the order to the Court of Appeals for the Federal Circuit.

The Court denied amendment of the remand order since it directed the ITC in open court to apply the 1982 statute, where applicable.

The Court vacated the stay of the remand order.

The Court noted that plaintiffs withdrew their motion for a preliminary injunction in light of the denial of the stay.

## DISCUSSION

■ While the Court did cite incorrectly to the statute as amended in 1988 by the Omnibus Trade and Competitiveness Act of 1988, Pub.L. 100–418, 102 Stat. 1107 (1988) (the 1988 Act), there was no material alteration of the statute effected by the 1988 amendments.[1] In the legislative history of

1. The 1988 Act added the new derivative product amendment and the business cycle amendment to section 1677(7)(C)(iii). Neither change was relevant to the facts of *Trent Tube.* 19 U.S.C. § 1677(7)(B)–(C)(iii) as amended by the 1988 Act is set out below. Brackets indicate the changes made to the language of the text; incidental numbering changes in section 1677(7)(B) have not been noted.

**(B) Volume and consequent impact**

In making determinations under sections 1671b(a), 1671d(b), 1673b(a), and 1673d(b) of this title, the Commission, [in each case]—

(i) shall consider—

(I) the volume of imports of the merchandise which is the subject of the investigation,

(II) the effect of imports of that merchandise on prices in the United States for like products, and

(III) the impact of imports of such merchandise on domestic producers of like products, [but only in the context of production operations within the United States; and]

[ (ii) may consider such other economic factors as are relevant to the determination regarding whether there is material injury by reason of imports.]

[In the notification required under section 1671d(d) or 1673d(d) of this title, as the case may be, the Commission shall explain its analysis of each factor considered under clause (i), and identify each factor considered under clause (ii) and explain in full its relevance to the determination.]

**(C) Evaluation of [relevant factors]**

For purposes of subparagraph (B)—

**(i) Volume**

In evaluating the volume of imports of merchandise, the Commission shall consider whether the volume of imports of the merchandise, or any increase in that volume, either in absolute terms or relative to produc-

tion or consumption in the United States, is significant.

**(ii) Price**

In evaluating the effect of imports of such merchandise on prices, the Commission shall consider whether—

(I) there has been significant price [underselling] by the imported merchandise as compared with the price of like products of the United States, and

(II) the effect of imports of such merchandise otherwise depresses prices to a significant degree or prevents price increases, which otherwise would have occurred, to a significant degree.

**(iii) Impact on affected [domestic] industry**

In examining the impact [required to be considered under subparagraph (B)(iii) ], the Commission shall evaluate all relevant economic factors which have a bearing on the state of the industry [in the United States], including, but not limited to—

(I) actual and potential decline in output, sales, market share, profits, productivity, return on investments, and utilization of capacity,

(II) factors affecting domestic prices,

(III) actual and potential negative effects on cash flow, inventories, employment, wages, growth, ability to raise capital, and investment, [and]

[ (IV) actual and potential negative effects on the existing development and production efforts of the domestic industry, including efforts to develop a derivative or more advanced version of the like product.]

[The Commission shall evaluate all relevant economic factors described in this clause within the context of the business cycle and conditions of competition that are distinctive to the affected industry.]

the 1988 Act, Congress stated expressly that the amendments to section 1677(7)(B)–(C) were to clarify that the ITC is required to consider and explain its analysis of all the factors outlined in the statute. H.R. Rep. No. 40, 100th Cong., 1st Sess., pt. 1 at 128 (1987) ("The changes which the Committee has approved to section 771(7)(B)–(C) are not dramatic—indeed most of them are clarifications of current law and of original Congressional intent with respect to current law."); S.Rep. No. 71, 100th Cong., 1st Sess. 115 (1987) ("The changes which the Committee has approved to section 717(7)(B)–(C) [sic] are generally clarifications of current law and of original Congressional intent with respect to current law.").

Rule 61 of the Rules of this Court states that:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

The Court found no reason to disturb its judgment since the underlying rationale remained the same once the citations to the 1982 statute were inserted. Therefore, this Court simultaneously with this opinion issued an errata sheet for Slip Opinion 90–58.

■ Defendant-intervenors had moved for a rehearing and claimed that reopening of the ITC's investigation was necessary on the ground that it was impossible for Chairman Liebeler or the Commission to provide an explanation of the Chairman's determination since she had left her post at the ITC. The Court found that the issue of a Commissioner leaving the ITC and therefore not being able to respond to a remand order was determined in *SCM Corp. v. United States*, 2 CIT 1, 519 F.Supp. 911 (1981). In *SCM*, where two Commissioners had left their posts before the remand order had issued, the court stated that the "remand order plainly required an institutional response (by the Commission) rather than responses by each of the individual Commissioners participating in the majority's determination." 2 CIT at 7, 519 F.Supp. at 916. The Court therefore held in the instant case that Chairman Liebeler's departure was not a sufficient ground for a rehearing or a reopening of the investigation.

## CONCLUSION

Upon consideration of the determinations made at oral argument on July 3, 1990, this Court holds that —— CIT ——, in conjunction with the errata sheet which has been issued simultaneously, correctly employs 19 U.S.C. § 1677(7) (1982).