**TRENT TUBE DIVISION, Crucible Materials Corporation; Armco–Specialty Steel Division; Damascus Tubular Products; Allegheny Ludlum Corporation; Carpenter Technology Corporation; and United Steelworkers of America, AFL–CIO–CLC, Plaintiffs,**

v.

**·UNITED STATES, Defendant,**

and

**Avesta Sandvik Tube, AB and Avesta Stainless, Inc.,
Defendants–Intervenors.**

**Court No. 87–12–01189.**

United States Court of
International Trade.

Nov. 27, 1990.

Collier, Shannon & Scott, David A. Hartquist, Kathleen Weaver Cannon and Nicholas D. Giordano, Washington, D.C., for plaintiffs.

Lyn M. Schlitt, Gen. Counsel, James A. Toupin, Asst. Gen. Counsel, U.S. Intern. Trade Com'n, William T. Kane, Washington, D.C., for defendant.

Freeman, Wasserman & Schneider, Jack Gumpert Wasserman and Patrick C. Reed, New York City, for defendants-intervenors.

## MEMORANDUM OPINION

CARMAN, Judge:

Defendant-intervenors, Avesta Sandvik Tube, AB (AST), contest the remand results in *Welded Stainless Steel Pipes and Tubes From Sweden,* Inv. No. 731–TA–354 (Final) (Remand), USITC Pub. 2304 (Aug. 1990). Defendant, United States International Trade Commission (Commission or ITC), opposes AST's challenge and seeks to sustain the remand determination as supported by substantial evidence on the record and as otherwise in accordance with law. Plaintiff (Trent) joins defendant.

## I. BACKGROUND

This case grew out of plaintiff's challenge to the final determination of defendant, that an industry in the United States was not materially injured by reason of welded stainless steel pipe and tubes from Sweden. *See Stainless Steel Pipes and Tubes from Sweden,* Inv. No. 731–TA–354 (Final), USITC Pub. No. 2033 (Nov.1987). On June 20, 1990, this Court issued *Trent Tube Div. v. United States,* 14 CIT ——, 741 F.Supp. 921, Slip Op. 90–58 (1990), *modified,* 14 CIT ——, 741 F.Supp. 227, Slip. Op. 90–66 (1990), which remanded to the ITC the determination of Chairman Liebeler with instructions to evaluate the determination under the proper statutory test.[1]

On August 6, 1990, pursuant to the remand, the ITC issued *Welded Stainless*

1. Voting in the negative majority were Chairman Liebeler, Vice-Chair Brunsdale, and Commissioner Rohr. Commissioners Eckes and Lodwick voted in the affirmative. In Slip Opinion 90–58, 741 F.Supp. 921, this Court determined that the negative views of Vice-Chair Brunsdale and Commissioner Rohr were supported by substantial evidence on the record and were otherwise in accordance with law. However, this Court found that Chairman Liebeler erred in part in reaching her determination and remanded the case to the ITC with instructions that it evaluate the investigation in relation to the factors outlined in 19 U.S.C. §§ 1677(7)(C)(iii) and (B)(i)(III) (1988), and comply with 19 U.S.C. § 1677(7)(B) (1988).

Slip Opinion 90–58, 741 F.Supp. 921 contained an error involving the reference to the post–1988 antidumping statute, instead of to the applicable pre–1988 statute. Finding the error harmless, this Court modified Slip Opinion 90–58, 741 F.Supp. 921 by issuing Slip Opinion 90–66, 741 F.Supp. 227, dated July 6, 1990, which reflected a correction of the error. In Slip Opinion 90–66, 741 F.Supp. 227, this Court referred to its directions to the ITC in open court to employ 19 U.S.C. § 1677(7)(B)(iii) (1982) and 19 U.S.C. § 1677(7)(C)(iii) (1982) specifically and to apply the 1982 statute "where applicable" in carrying out its remand. Slip

Opinion 90–66 at 3, 741 F.Supp. at 228. This Court then concluded in Slip Opinion 90–66, 741 F.Supp. 227 that:

[I]ts analysis in slip opinion 90–58 [741 F.Supp. 921] was not affected by the citation to the 1988 section and that its analysis applied in the same manner as though the Court had cited the 1982 section as the basis for its determination.

Slip Opinion 90–66 at 3, 741 F.Supp. at 229.

Citing the "law of the case" doctrine as authority, defendant-intervenor Avesta Sandvik Tube AB (AST) argues that this Court's remand instructions somehow bind the ITC to follow the partial work product contained in Commissioner Liebeler's determination as to the price effect and import volume factors under the statute, simply because this Court found those factors to have been "addressed" by Commissioner Liebeler. *See* Slip Opinion 90–58 at 9, 741 F.Supp. at 926.

If this Court were to accept that argument, not only would Liebeler's successor Commissioner Newquist be bound to her price effect and import volume findings, but presumably all other members of the Commission would be similarly bound. This would cause an absurd and legally questionable result. It is not the role of this Court to diminish the fact-finding role of the agency in such a manner; such action would undermine the principal long rec-

*Steel Pipes and Tubes From Sweden,* Inv. No. 731–TA–354 (Final) (Remand), USITC Pub. 2304 (Aug.1990). By a two-to-two vote, the Commission determined that:

[A]n industry in the United States is materially injured by reason of imports of welded stainless steel pipes and tubes from Sweden, that have been found by the Department of Commerce to be sold in the United States at less than fair value.

*See* Tariff Act of 1930 § 735(b), 19 U.S.C. § 1673d(b) (1988). Commissioner Lodwick, who reached an affirmative determination, readopted his original views in their entirety on the remand.[2] Acting Chairman Brunsdale and Commissioner Rohr made negative determinations on the remand and readopted their respective views in their entirety. Commissioner Newquist, who replaced Chairman Liebeler since the original final negative determination, made an affirmative determination of injury on the remand based upon the record before the Commission in its original investigation. As a result of Commissioner Newquist's determination, the final determination of the ITC on the remand became *affirmative. See* 19 U.S.C. § 1677(11) (1988).[3] Defendant-intervenors AST challenge the remand determination.

On August 22, 1990, this Court heard Trent's motion requesting that defendant and AST show cause why the remand determination should not be summarily affirmed and the action dismissed or, in the alternative, seeking to enjoin the liquidation of entries of the subject merchandise pending affirmance of the ITC's determination.[4] At the close of that hearing, this Court allowed a brief comment period directed to the narrow question of whether the ITC complied with the remand instructions issued by this Court. On September 28, 1990, this Court invited further briefing directed to the question of whether the ITC's remand determination was supported by substantial evidence on the record and otherwise in accordance with law.

The Court is now presented with the question of whether the remand determination of August 6, 1990, complied with the order of the Court as to its remand instructions and whether the remand determination is supported by substantial evidence on the record and otherwise in accordance with the law. *See* 19 U.S.C. § 1516a(b)(1)(B) (1988).

## II. CONTENTIONS OF THE PARTIES

AST asserts that the August 6, 1990, remand determination does not comply

ognized by this Court that it "may not substitute its judgment for that of the [agency]...." *American Spring Wire Corp. v. United States,* 8 CIT 20, 22, 590 F.Supp. 1273, 1276 (1984), *aff'd sub nom., Armco, Inc. v. United States,* 760 F.2d 249 (1985). The purpose of a remand generally is to require the agency to explain its determination or where appropriate, correct its determination. *See, e.g., SCM Corp. v. United States,* 2 CIT 1, 7, 519 F.Supp. 911, 916 (1981).

Although this Court did not find that all parts of the Liebeler determination contained error, it nevertheless held in Slip Opinion 90–58, 741 F.Supp. 921 that the Liebeler opinion as a whole was unsupported by substantial evidence or otherwise not in accordance with law because she failed to apply the proper statutory test outlined in 19 U.S.C. § 1677(7)(B) and (C). Slip Opinion 90–58 at 12, 741 F.Supp. at 927. Commissioner Newquist, as set forth elsewhere in this opinion, examined the relevant data in the record, applied his findings of fact to the statutory requirements, and came to a different conclusion than Commissioner Liebeler. This Court recognizes that reasonable minds can draw different

inferences from the same record. *See Fischer & Porter Co., Inc. v. U.S. Int'l Trade Comm'n,* 831 F.2d 1574, 1577 (1987). Based upon this rationale and for the reasons set forth elsewhere in this opinion, this Court holds that the determination of Commissioner Newquist is supported by substantial evidence on the record and in accordance with law.

**2.** Commissioner Eckes, who joined in Commissioner Lodwick's views in the original minority determination, left the Commission before the remand determination was due and took no part in the remand determination.

**3.** Pursuant to 19 U.S.C. § 1677(11), "If the Commissioners voting on a determination by the Commission are evenly divided as to whether the determination should be affirmative or negative, the Commission shall be deemed to have made an affirmative determination."

**4.** This Court denied both motions in *Trent Tube Div. v. United States,* 14 CIT ——, 744 F.Supp. 1177, 1180, Slip Op. 90–83 (1990).

with this Court's specific remand instructions as provided for in Slip Opinions 90–58, 741 F.Supp. 921 and 90–66, 741 F.Supp. 227. AST contends that Commissioner Newquist, who did not participate in the original proceedings, explicitly ignored this Court's instructions that the Commission explain Chairman Liebeler's analysis of the impact of imports on the domestic industry in relation to the factors outlined in 19 U.S.C. § 1677(7)(C)(iii) and 1677(7)(B)(iii) *See Views of Commissioner Don E. Newquist on Remand (Newquist's Views)*, USITC Pub. 2304, at 1 n. 4.[5]

According to AST, Slip Opinions 90–58, 741 F.Supp. 921 and 90–66, 741 F.Supp. 227 constitute the so-called "law of the case", which requires Commissioners Lodwick and Newquist on remand to adopt the views of those Commissioners whose determinations were addressed by this Court in Slip Opinions 90–58, 741 F.Supp. 921 and 90–66, 741 F.Supp. 227 and found to have been supported by substantial evidence.[6] AST concludes that since the Commission's original determination was sustained in all respects except a portion of Chairman Liebeler's views, the remand instructions were naturally limited to providing an adequate explanation of those views. As previously pointed out, Commissioner Newquist did not endeavor to explain the analysis of Commissioner Liebeler, but rather applied his own analysis, keeping in mind the statutory test, to the facts as they appeared in the record. *See supra* note 1 and accompanying text.

Defendant maintains that the Commission was under no obligation to explain

Chairman Liebeler's views and properly supplied a corrected determination. Defendant urges that AST's reliance upon the law of the case doctrine is misplaced because the Commissioners present on remand need not concur with the earlier views of their colleagues which this Court has found to have been based upon substantial evidence. *See SCM*, 2 CIT at 7, 519 F.Supp. at 916 (a remand order does not require individual responses by each of the Commissioners, but rather an "institutional response").[7] Defendant maintains that Slip Opinions 90–58, 741 F.Supp. 921 and 90–66, 741 F.Supp. 227 dispose of AST's claim that the views of the original Commission majority constituted the only legally valid interpretation of the evidence. Defendant further urges that this Court's finding that a portion of the original majority's views was supported by substantial evidence does not preclude other views from meeting that standard.

## III. DISCUSSION

In Slip Opinion 90–58, 741 F.Supp. 921, this Court held that the negative determinations of Vice–Chairman Brunsdale and Commissioner Rohr were supported by substantial evidence and were otherwise in accordance with law. This Court sees no reason to disturb these determinations. Furthermore, the Court notes that both Commissioners reaffirmed their previous determinations based upon the same record. Since the Lodwick determination was previously in the minority, this Court

---

**5.** Footnote 4 of Commissioner Newquist's Views provides:

> The Court's Opinion of June 20, 1990, contained the instruction to 'explain[ ] [Chairman Liebeler's] analysis[.]' Slip Op. 90–58 at 12 [741 F.Supp. at 927]. Because that instruction was deleted by the Court in its July 6, 1990 revision of the remand order, and because my analysis differs from the type set forth in Commissioner Liebeler's views, I have not provided any evaluation or explanation of Commissioner Liebeler's views. *See SCM Corp. v. U.S.*, 519 F.Supp. 911, 915–916 (CIT 1981).

*Welded Stainless Steel Pipes and Tubes from Sweden*, Inv. No. 731–TA–354, USITC Pub. 2304, at 1–2 n. 4 (Aug.1990). [# 42, pp. 1–2]

**6.** For example, AST interprets this Court's remand instructions directing the ITC to explain Chairman Liebeler's analysis in relation to the

factors outlined in 19 U.S.C. § 1677(7)(C)(iii) and 1677(7)(B)(iii) as requiring the ITC to supply "further explanation of the impact of imports on the domestic industry." According to AST's papers, the "settled findings on low import volume, lack of price effect and limited fungibility" in the original determination constitute the law of the case, and, thus, any evaluation by the ITC on remand must occur within that context, *i.e.*, not reach a contrary conclusion regarding those "settled" issues.

**7.** The *SCM* court further opined that:

> [T]he contested determination was an institutional decision, and as such, can be explained *or corrected* on remand by the Commission, notwithstanding that the membership of the Commission has changed since the time the determination was originally reached.

2 CIT at 7, 519 F.Supp. at 916 (emphasis added).

in Slip Opinion 90–58, 741 F.Supp. 921 declined as unnecessary to examine whether the statutory requirements for making a determination as to material injury had been met by Commissioner Lodwick. Commissioner Lodwick reaffirmed his views on the remand in their entirety.

This Court must examine the individual views of each Commissioner who made an affirmative determination on remand for compliance with this Court's remand instructions and to see if these determinations are supported by substantial evidence on the record or otherwise in accordance with law.

### A. *The Legal Standard*

■ This Court possesses the power to remand cases to the ITC pursuant to 28 U.S.C. § 2643(c)(1) (1988). The appropriate standard of review on remand is whether the ITC's remand determination is based upon substantial evidence on the record or otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). *See Washington Red Raspberry Comm'n v. United States,* 11 CIT 640, 670 F.Supp. 1004, 1005 (1987), *aff'd,* 859 F.2d 898, 902 (Fed.Cir. 1988).[8] Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Matsushita Elec. Indus. Co., Ltd. v. United States,* 750 F.2d 927, 933 (Fed.Cir.1984) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). It is "some evidence, more than a mere scintilla, in light of the record as a whole." *Kenda Rubber Indus. Co. v. United States,* 10 CIT 120, 125, 630 F.Supp. 354, 358 (1986).

■ As a general proposition, an ITC determination is presumed correct by this Court and the burden rests on the party challenging it to show otherwise. 28 U.S.C. § 2639(a)(1) (1988). Moreover, when applying the substantial evidence standard, "[t]he court may not substitute its judgment for that of the [agency] when the choice is 'between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo ....*' " *American Spring Wire,* 8 CIT at 22, 590 F.Supp. at 1276 (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)).

### B. *The Remand Instructions*

■ This Court's remand instructions called on the Commission to correct the error of one of its members, Chairman Liebeler, that operated to taint the entire resulting negative determination. Slip Opinion 90–58 at 12, 741 F.Supp. at 927. Further, to guide the Commission in its efforts on remand, this Court in Slip Opinion 90–58, 741 F.Supp. 921, as modified by Slip Opinion 90–66, identified those portions of the statute that Chairman Liebeler did not appear to address, namely 19 U.S.C. § 1677(7)(B)(iii) and (C)(iii) (1982). *See* Slip Opinions 90–58 at 9, 741 F.Supp. at 228, 90–66 at 3, 741 F.Supp. 926.

■ Although this Court was aware that Chairman Liebeler had departed the Commission prior to remand, *see* Slip Op. 90–66, 741 F.Supp. 227, this fact, of course, cannot be construed to disrupt the work of the Commission. As the court held in *SCM,* remands to the Commission ordering explanations of the views of individual members require an "institutional response" irrespective of the makeup of the Commission's membership at the time it receives remand instructions. 2 CIT at 7, 519 F.Supp. at 916. Furthermore, the *SCM* holding requires in the instant case that on remand the Commission is to be left with the task of responding as an *institution* and, at its option, to either correct or explain the Liebeler error. 2 CIT at 7, 519

---

**8.** In *Washington Red Raspberry,* this Court affirmed the results of the International Trade Administration's second remand determination after finding that the determination was based upon substantial evidence within the meaning of 19 U.S.C. § 1516a(b)(1)(B). The Court of Appeals for the Federal Circuit (CAFC) affirmed, stating that:

The appropriate standard of review of a final antidumping determination is limited to whether that determination is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.' It is in view of this standard that we review the [remand] determination before us.
859 F.2d at 902 (Fed.Cir.1988).

F.Supp. at 916. No argument has been advanced nor any evidence in the record discovered that Commissioners Lodwick and Newquist applied the analysis of Chairman Liebeler deemed defective by this Court in Slip Opinion 90–58, 741 F.Supp. 921. This Court finds that the Commission complied with this Court's remand instructions.

### C. Review of the Remand Determination for Substantial Evidence

■ The statutory requirements for Commissioners to consider in making final determinations concerning material injury are set out in 19 U.S.C. § 1677(7)(B) and (C) (1982). Those subparagraphs read as follows:

**(B) Volume and consequent impact**

In making its determinations under sections 1671b(a), 1671d(b), 1673b(a), and 1673d(b) of this title, the Commission shall consider, among other factors—

(i) the volume of imports of the merchandise which is the subject of the investigation,

(ii) the effect of imports of that merchandise on prices in the United States for like products, and

(iii) the impact of imports of such merchandise on domestic producers of like products.

**(C) Evaluation of volume and of price effects**

For purposes of subparagraph (B)—

**(i) Volume**

In evaluating the volume of imports of merchandise, the Commission shall consider whether the volume of imports of the merchandise, or any increase in that volume, either in absolute terms or relative to production or consumption in the United States, is significant.

**(ii) Price**

In evaluating the effect of imports of such merchandise on prices, the Commission shall consider whether—

(I) there has been significant price undercutting by the imported merchandise as compared with the price of like products of the United States, and

(II) the effect of imports of such merchandise otherwise depresses prices to a significant degree or prevents price increases, which otherwise would have occurred, to a significant degree.

**(iii) Impact on affected industry**

In examining the impact on the affected industry, the Commission shall evaluate all relevant economic factors which have a bearing on the state of the industry, including, but not limited to—

(I) actual and potential decline in output, sales, market share, profits, productivity, return on investments, and utilization of capacity,

(II) factors affecting domestic prices, and

(III) actual and potential negative effects on cash flow, inventories, employment, wages, growth, ability to raise capital, and investment.

19 U.S.C. § 1677(7)(B) and (C) (1982).

This Court now turns to an examination of whether the Lodwick and Newquist determinations passed muster as to the statutory test.[9]

### (1) Views of Commissioner Lodwick

The views of Commissioner Lodwick demonstrate that he considered the volume, effect, and impact of the imported merchandise in determining whether there was material injury. He concluded that the impact of the increasing volume and penetration of less than fair value (LTFV) imports of welded stainless steel pipes and tubes from Sweden priced to undercut domestic prices was visible upon the financial performance of the domestic industry. He

---

9. Although the Trade Agreements Act of 1979 requires the Commission to consider the statutory factors outlined in the text of this opinion, Congress apparently did not intend to mandate discussion of every factor. In *Jeannette Sheet Glass Corp. v. United States*, the court opined that "Congress did not mandate the Commission to discuss every facet of its investigation, but only 'material issues of law or fact.'" 9 CIT 154, 161, 607 F.Supp. 123, 130 (1985) (quoting House Doc. No. 96–153, 96th Cong., 1st Sess. 27 (1979), reprinted in 1979 U.S.Code Cong. & Ad. News 381, 665, 685).

further concluded that the subject imports were a cause of material injury to the domestic steel industry. *Dissenting Views of Commissioner Eckes and Commissioner Lodwick on Welded Stainless Steel Pipes and Tubes from Sweden (Lodwick's Views)*, USITC Pub. 2033, at 64.

AST's position that Commissioner Lodwick's views are based upon a single factor or neglected to tie observed volume trends and price effects is not supported by the record. Commissioner Lodwick made the following relevant observations on the condition of the domestic industry in the most recent year of the investigation, 1986:

> In a weak and highly competitive market, Swedish imports are increasing in volume and market penetration. There is evidence of general price undercutting by these LTFV imports, and also price suppression. Throughout the period of investigation, the performance of the domestic industry as a whole has been poor.
>
> . . . .
>
> The operating levels of the domestic industry declined in 1986, with domestic shipments and capacity utilization falling to their lowest points during the investigative period.
>
> . . . .
>
> Employment factors also deteriorated in 1986. Both hours worked and total compensation fell to their lowest annual levels of the investigative period, while productivity remained stable. In interim 1987, hours worked and total compensation continued to fall, although productivity improved slightly.
>
> Financial performance indicators reflect the same conditions as operating and employment factors. Net sales were lower in 1986 than in 1984 or 1985, and operating losses incurred in all three years.

*See Lodwick's Views*, USCIT.Pub. 2033, at 61–62.

Commissioner Lodwick then provided specific data (or reference thereto) to address the three general statutory criteria outlined in 19 U.S.C. § 1677(7)(B) and (C) (1982)—import volume, price effects, and causation. With respect to import volume, Commissioner Lodwick found that "[t]he volume of imports from Sweden increased more than 50% from 1844 short tons in 1984 to 2822 short tons in 1986." *Lodwick's Views*, USCIT Pub. 2033, at 63. Further, he found the volume of "[i]mport penetration rose concommitantly [sic] from 2.4% in 1984 to 3.7% in 1986." *Id.* In discussing price effects, Lodwick found that the "increase in import volume and penetration was achieved with general undercutting of domestic prices[,]" based upon "[i]nformation on purchases by distributors. . . ." *Id.* Lastly, Commissioner Lodwick tied the above price and volume data to the condition of domestic producers. He stated that "[t]he impact of this increasing volume and penetration of LTFV imports from Sweden, which were priced to undercut domestic prices, is clearly visible in the poor operating and financial performance of the domestic industry." *Id.* at 64.

Drawing upon relevant data, Commissioner Lodwick discussed the three salient statutory factors and reached a reasonable conclusion that this Court will not disturb absent strong indications that the determination was based upon some clear error of judgment. This Court finds that AST has failed to overcome the presumption of correctness attached to Commissioner Lodwick's determination. 28 U.S.C. § 2639(a)(1) (1988).

This Court holds that the Commissioner Lodwick's determination was supported by substantial evidence on the record and is otherwise in accordance with law.

(2) Views of Commissioner Newquist

Commissioner Newquist, who succeeded Commissioner Liebeler, declined to examine the so-called "five-factor test" utilized by Chairman Liebeler, examined the record, applied the statutory test set forth at 19 U.S.C. § 1677(7)(B) and (C) (1982), and made an affirmative finding of injury. As Commissioner Lodwick, Commissioner Newquist based his determination on information derived from questionnaire responses from producers which were estimated to

account for approximately ninety percent of all U.S. shipments of the subject welded product. *Staff Report to the Commission* (Report), in Administrative Record, List 2, Doc. 17, at A–32.[10] He found that the volume and market share of imports had increased and that the subject imports were consistently priced to undercut the domestic like product.

In examining import volume and market penetration, he found that:

> The volume of LTFV imports from Sweden rose steadily from 1984 through 1986, increasing from 1,844 short tons in 1984 to 2,191 in 1985 and 2,822 short tons in 1986. As a share of the domestic market, subject imports increased (by volume) from 2.4 percent in 1984, to 2.8 percent in 1985, to 3.7 percent in 1986. Measured by value, market penetration by the subject imports rose from 2.0 percent in 1984 and 1985, to 2.7 percent in 1986. [footnote omitted] These data, however, understate the market presence of the subject imports in 1986, when the importer, Avesta Stainless, Inc., drew down substantially on accumulated inventories. . . .

*Newquist's Views*, USCIT Pub. 2304, at 6.

Commissioner Newquist stated that increases in volume, value, and market penetration of the subject imports coincided with a decrease in the market share held by domestic producers. *Id.* at 7. As Commissioner Lodwick, Commissioner Newquist found "consistent price undercutting by the subject imports over most of the period of investigation" *Id.* at 8. For example, the Commissioner stated that "[i]n 28 of 33 quarterly price comparisons of imported and domestic grades of A–312 pipe, the subject imports undersold the domestic product, in most instances by margins ranging from 10 to 38 percent."[11]  *Id.* at 8.

AST's argument that its price undercutting did not have an injurious impact on the domestic industry because suppliers chosen by producers were largely dictated by non-price factors—particularly longer lead times involved in obtaining Swedish imports—was adequately addressed by Commissioner Newquist. Commissioner Newquist discussed several factors which might have had an impact upon price competition between the Swedish welded imports and the like product and concluded that these factors did not substantially reduce price competition. Citing to the Staff Report, he found that up until 1986, import sales were made from AST's U.S. warehouse, where the lead time was two weeks or less. Further, "th[e] difference in lead times narrowed toward the end of the period of investigation when constraints on the supply of raw materials increased the lead time required in purchasing from U.S. producers." *Newquist's Views*, USCIT Pub. 2304, at 9.

The above analysis of the impact of the subject imports on the domestic industry strikes this Court as reasonable. This Court holds that the findings by Commissioner Newquist that the domestic industry suffered substantial injury by reason of the subject imports are supported by substantial evidence on the record and are otherwise in accordance with law.

AST also contends that the data in the record is "grossly insufficient" to support the ITC's injury determination and that Commissioners Lodwick and Newquist should therefore have drawn an "adverse inference" against the domestic industry. In attacking the data base relied upon by the Commission, AST argues in its *Supplementary Objections to Remand Determination* at 6 that: "Only 23 of the 35 U.S. producers provided any response to the Commission's questionnaires, and many of these responses were incomplete. Thus,

---

10. Additionally, employment data were supplied by firms accounting for 75 percent of reported shipments, Report at A–42, n. 1.; financial data limited to the welded product were provided by firms accounting for 85 percent of reported shipments, *id.* at A–49, n. 1.; and firms accounting for 51 percent of reported shipments supplied pricing data to the ITC. *Id.* at A–85.

11. Commissioner Newquist noted that "A–312 pipe constitutes a major area of competition in the U.S. market between domestic and Swedish producers of welded stainless steel pipes and tubes." *Newquist Views*, USCIT Pub. 2304, at 8 n. 24.

the Commission did not obtain any information from over one-third of the members of the domestic industry and ... most of this information was grossly incomplete."

This Court declines to discuss at length the adequacy of the questionnaire responses. This problem was addressed in *Hannibal Indus., Inc. v. United States*, 13 CIT ——, 710 F.Supp. 332, 336 (1989), where the court stated that: "[I]n challenges to the Commission's investigative thoroughness, the court has remanded determinations only for failure to seek necessary information." Further, "the Commission has broad discretion to pursue an investigation in a manner that will provide substantial evidence for its determinations." *Granges Metallverken AB v. United States*, 13 CIT ——, 716 F.Supp. 17, 25 (1989) (citations omitted). Since it appears from the record that the Commission made adequate attempts to *obtain* relevant data, we cannot say that the failure of certain producers to respond or respond adequately to reasonable Commission inquiries required the Commission to draw some "adverse inference" against the domestic industry. *See Alberta Pork Producers' Mktg. Bd. v. United States*, 11 CIT 563, 580, 669 F.Supp. 445, 459 (1987).

This Court need not spend much time addressing the issue of seeking further participation by Commissioner Liebeler in these proceedings. As articulated in *SCM*, the ITC "is a continuing institution, regardless of changes in its membership." 2 CIT at 7, 519 F.Supp. at 915. Moreover, membership changes within the Commission "do[ ] not affect its power to discharge its statutory duties (citations omitted)." *Sprague Elec. Co. v. United States*, 2 CIT 302, 309, 529 F.Supp. 676, 682 (1981). As discussed in this opinion, Commissioner Newquist properly complied with the remand order when he employed the proper statutory test to the record before him. Individuals occupy positions of authority within such institutions only when they serve such institutions in their official capacities. This Court is not bound by any statute or case authority cited to order former-Chairman Liebeler to return from private life and explain her original views.[12]

The holding in *Borlem, S.A. v. United States*, 13 CIT ——, 718 F.Supp. 41 (1989), *aff'd* 913 F.2d 933 (Fed.Cir.1990) is inapposite to the instant action. The facts in *Borlem* are peculiar to that case. Furthermore, there are no allegations by AST asserting a mistake as to the facts upon which the ITC's determination was made in the sense of *Borlem*.

## IV.  CONCLUSION

This Court holds that the Commission has complied with the remand instructions, and that the remand determination is supported by substantial evidence on the record and is otherwise in accordance with law. Accordingly, the remand determination of the ITC is affirmed.

---

**12.** Although this Court in some circumstances "*may* require the administrative officials who participated in the decision to give testimony explaining their action[,] ... such inquiry into the mental processes of administrative decision-makers is usually to be avoided." (emphasis added). *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971).