TRENT TUBE DIVISION, CRUCIBLE MATERIALS CORPORATION; Damascus Tubular Products; Allegheny Ludlum Corporation; and United Steelworkers of America, AFL–CIO–CLC, Plaintiffs–Appellees,

and

Armco–Specialty Steel Division and Carpenter Technology Corporation, Plaintiffs,

and

The United States International Trade Commission, Defendant–Appellee,

v.

AVESTA SANDVIK TUBE AB and Avesta Stainless, Inc., Defendants–Appellants.

No. 91–1173.

United States Court of Appeals, Federal Circuit.

July 27, 1992.

Rehearing Denied Aug. 27, 1992.

Kathleen Weaver Cannon, Collier, Shannon & Scott, of Washington, D.C., argued

for plaintiffs-appellees. With her on the brief were David A. Hartquist, Nicholas D. Giordano and Stephen A. Jones.

William T. Kane, Office of General Counsel, Intern. Trade Com'n, of Washington, D.C., argued for defendant-appellee. With him on the brief were Lyn M. Schlitt, General Counsel, and James A. Toupin, Assistant General Counsel.

Patrick C. Reed, Freeman, Wasserman & Schneider, of New York City, argued for defendants-appellants. With him on the brief were Jack Gumpert Wasserman and Al J. Daniel, Jr.

Before MICHEL, Circuit Judge, BENNETT, Senior Circuit Judge, and PLAGER, Circuit Judge.

PLAGER, Circuit Judge.

Avesta Sandvik Tube AB and Avesta Stainless Inc. (collectively Avesta) appeal from two decisions of the United States Court of International Trade. The first decision remanded, for further evaluation, the determination of Appellee The United States International Trade Commission (ITC or Commission) that certain imported welded stainless steel pipes and tubes from Sweden did not cause or threaten to cause material injury to the domestic industry. *Trent Tube Division, Crucible Materials Corp. v. United States,* 741 F.Supp. 921 (1990) (hereinafter *Trent Tube/CIT–I*). On remand, the ITC reached the opposite conclusion—that the accused imports *do* materially injure the domestic industry. The Court of International Trade then upheld the ITC's remand determination. *Trent Tube Division, Crucible Materials Corp. v. United States,* 752 F.Supp. 468 (1990) (hereinafter *Trent Tube/CIT–II*). Both of these decisions of the Court of International Trade—to remand the ITC's initial determination and to affirm the

ITC's remand determination—are at issue in this appeal; both are affirmed.

## BACKGROUND

In October of 1986, a group of domestic manufacturers, calling themselves the Specialty Tubing Group, filed an antidumping petition with the ITC and the Department of Commerce (Commerce), pursuant to 19 U.S.C. § 1673a(b)(1) (1982). The petition alleged that sales of certain imports from Sweden at less than fair value (LTFV) were causing or threatening to cause material injury to the domestic industry for both welded and seamless stainless steel pipes and tubes. *See* 19 U.S.C. § 1673.

Commerce determined that the filing of the petition satisfied the statutory requirements and that the accused Swedish imports of stainless steel hollow products, both welded and seamless, were in fact being sold at LTFV within the contemplation of 19 U.S.C. § 1673(1). In the final investigation conducted by the ITC, it was concluded that the domestic industry for *welded* stainless steel pipes and tubes is *not* materially injured or threatened with material injury by the accused imports, while the domestic industry for *seamless* stainless steel pipes and tubes *is* materially injured by the imports. *Stainless Steel Pipes and Tubes From Sweden,* Invest. No. 731–TA–354 (Final), USITC Pub. No. 2033, 10 ITRD 1374 (Nov.1987) (hereinafter *ITC Pub. 2033*).[1] Only the first of these determinations, regarding the welded products, is at issue here.[2] The ITC's majority report, in its "Views of the Commission," separately addressed the conclusions that, regarding the effect of the accused welded imports on the domestic industry, 1) there is no actual material injury caused by the imports, and 2) the imports present no

---

**1.** The Commission was split 3–2 and 4–1 on these determinations. Contrary to the respective majority views, Commissioners Eckes and Lodwick concluded that the welded product domestic industry *is* materially injured by the Swedish imports, and Chairman Liebeler determined that the seamless product domestic industry *is not* materially injured or threatened with material injury by the accused imports.

**2.** The ITC determination regarding seamless products was sustained by the Court of International Trade in *Sandvik AB v. United States,* 721 F.Supp. 1322 (1989), *aff'd without opinion,* 904 F.2d 46 (Fed.Cir.1990).

threat of material injury.[3] In support of its conclusion that no material injury is *threatened* by the imports, the report explicitly referred to and discussed the factors required statutorily to be considered. *ITC Pub. 2033*, at 18–20. *See also* 19 U.S.C. § 1677(7)(F)(i, ii) (Supp. II 1984).

However, regarding its conclusion that no material injury is *already being caused* by the subject imports, the report simply noted that "[b]ased on considerations that each of us discusses in separate Additional Views, we determine that there is no material injury by reason of [the accused] LTFV imports...." *ITC Pub. 2033*, at 17. Those Additional Views regarding the welded products were attached to the majority report.[4]

Appellees Trent Tube Division, Crucible Materials Corporation; Damascus Tubular Products; Allegheny Ludlum Corporation; and United Steelworkers of America, AFL–CIO–CLC (collectively Trent Tube) brought an action in the Court of International Trade challenging the ITC's determination regarding the welded imports. Trent Tube challenged the determinations of each of the Commissioners in the majority—Liebeler, Brunsdale and Rohr—by attacking not the joint majority report, but rather the respective individual Additional Views. *See Trent Tube/CIT–I*, 741 F.Supp. at 924.

The Court of International Trade thoroughly analyzed *ITC Pub. 2033*, and concluded, in an opinion dated June 20, 1990, that Brunsdale's and Rohr's analyses and determinations were supported by substantial evidence on the record and otherwise were in accordance with law. *Trent Tube/CIT–I*, 741 F.Supp. at 931, 935. However, the Court held that Liebeler's analysis and determination lacked a proper foundation, and focused improperly, at least in major part, on the intent of the importer and on injury to competition rather than to the

domestic industry. 741 F.Supp. at 926–27 & 935. The Court of International Trade explained that

> it appears that [Liebeler] has failed to examine the factors outlined in section 1677(7)(C)(iii) [regarding consideration of the impact on the affected industry.] It is also unclear whether or not [Liebeler] considered the impact of the Swedish imports on domestic producers as set out in section 1677(7)(B)(iii). Since these factors have not been examined as they must be to comply with the statute, the Court holds that Chairman Liebeler's determination is not supported by substantial evidence on the record and is not in accordance with law. Therefore, her determination is remanded with instructions to evaluate the investigation in relation to the factors outlined in section 1677(7)(C)(iii) and section 1677(7)(B)(iii).

741 F.Supp. at 927.

On remand, however, the ITC came to a different conclusion altogether. Changes in the Commission membership which had occurred in the interim accounted for the difference. Liebeler and Eckes had both departed. The remaining three members of the Commission all readopted their original views *in toto*—Brunsdale and Rohr their earlier negative determinations, and Lodwick his earlier positive determination. Commissioner Newquist, a new addition since the original decision, did not explain Liebeler's views but instead separately concluded that the accused imports did cause material injury. *Welded Stainless Steel Pipes and Tubes From Sweden*, Invest. No. 731–TA–354 (Final) (Remand), USITC Pub. No. 2304, 12 ITRD 2387 (Aug.1990) (hereinafter *ITC Pub. 2304*).

The vote was 2–2, but a tie is deemed to be a determination that the domestic industry is materially injured by the imports. 19

---

**3.** The ITC determined that the domestic industry did suffer material injury, but that the injury was not caused by the accused imports. *ITC Pub. 2033*, at 17.

**4.** Vice Chairman Brunsdale's and Commissioner Rohr's Additional Views addressed the welded products. *ITC Pub. 2033*, at 41–51 & 53–60. Chairman Liebeler's Additional and Dissenting

Views addressed, respectively, the welded and the seamless products; as noted above, Liebeler dissented from the majority determination regarding the seamless products. *Id.* at 21–39. Also attached to the majority report was the joint Dissenting Views of Commissioners Eckes and Lodwick, regarding the welded products. *Id.* at 61–64.

U.S.C. § 1677(11). Thus the ITC determination on remand was that the accused imports *are* causing material injury to the domestic industry for welded stainless steel pipes and tubes—the reverse of the original determination.

Again, an action was brought in the Court of International Trade; this time Avesta challenged the ITC's remand determination. Avesta argued that the ITC did not comply with the specific remand instructions of the Court of International Trade, and that the remand determination was not supported by substantial evidence on the record and was otherwise not in accordance with the law.

Specifically, Avesta contended that Commissioner Newquist ignored the instructions to explain Chairman Liebeler's analysis, in relation to the factors outlined in 19 U.S.C. § 1677(7)(C)(iii) and 1677(7)(B)(iii) (1982). *Trent Tube/CIT–II*, 752 F.Supp. at 470–71. Avesta also argued that the instructions compelled Commissioners Lodwick and Newquist to adopt the views of the original majority, whose determination had already been found to be supported by substantial evidence and otherwise in accordance with the law. Thus, Avesta concluded, the remand determination must be limited to providing an explanation in support of those views rather than to undertaking a *de novo* analysis of the facts of record.

In an opinion dated November 27, 1990, Judge Carman, who had also heard the original action before the Court of International Trade, laid out the scope of review:

> This Court must examine the individual views of each Commissioner [Lodwick and Newquist] who made an affirmative determination on remand for compliance with this Court's remand instructions and to see if these determinations are supported by substantial evidence on the record or [sic—and] otherwise in accordance with law.

*Trent Tube/CIT–II*, 752 F.Supp. at 472. Acknowledging that Liebeler departed from the Commission before the case was remanded, the Court noted that

remands to the Commission ordering explanations of the views of individual members require an 'institutional response' irrespective of the makeup of the Commission's membership at the time it receives remand instructions.... [O]n remand the Commission is to be left with the task of responding as an *institution* and, at its option, to either correct or explain the Liebeler error.

*Id.* The Court then concluded that the Commission had complied with its remand instructions, and turned its attention to the sufficiency of the resulting determination.

The Court first noted that Lodwick had addressed the requisite statutory criteria—import volume, price effects, and causation:

> Drawing upon relevant data, Commissioner Lodwick discussed the three salient statutory factors and reached a reasonable conclusion that this Court will not disturb absent strong indications that the determination was based upon some clear error of judgment.... [Avesta] has failed to overcome the presumption of correctness attached to Commissioner Lodwick's determination. 28 U.S.C. § 2639(a)(1) (1988).

752 F.Supp. at 474. The Court held that "Lodwick's determination was supported by substantial evidence on the record and is otherwise in accordance with law." *Id.*

Turning next to the determination of Commissioner Newquist, the Court noted that Newquist "examined the record, applied the statutory test set forth at 19 U.S.C. § 1677(7)(B) and (C) (1982), and made an affirmative finding of injury." *Id.* After a detailed analysis of Newquist's views, the Court held that "the findings by Commissioner Newquist that the domestic industry suffered substantial injury by reason of the subject imports are supported by substantial evidence on the record and are otherwise in accordance with law." *Id.* at 475.

Accordingly, the Court affirmed the ITC remand determination. Avesta appeals from that decision.

## DISCUSSION

Avesta argues, as it did below, that the ITC's initial determination that there was no real or threatened causation of injury, *ITC Pub. 2033*, was supported by substantial evidence in the record and otherwise was in accordance with law; thus the Court of International Trade should have affirmed that first determination. And, argues Avesta, even if the decision to remand was correct, then the ITC's remand determination that there *was* injury: 1) did not comply with the focus and intent of the remand directions; 2) did not adhere to the law of the case as established in the first decision by the Court of International Trade; and 3) was not supported by substantial evidence and otherwise in accordance with law; thus the Court of International Trade erred when it affirmed the ITC's remand determination.

Avesta also raises for the first time an issue which allegedly arose after the second Court of International Trade action was submitted for decision. Avesta argues that the proceedings must be dismissed as moot, because the underlying petition is no longer supported by a majority of the domestic industry.

Regarding the mootness argument, Trent Tube responds that there is no jurisdictional requirement that the petition be continually supported by a majority of the domestic industry, and thus the action is not moot. On the merits, Trent Tube argues that the Court of International Trade was correct in remanding the ITC's initial determination because Liebeler's determination was not in accordance with law. On remand, the ITC's new determination was supported by substantial evidence and otherwise was in accordance with law.

The ITC, as might be expected, takes the middle ground. The ITC argues that its initial determination had sufficient basis in fact and law, and should have been affirmed. But, if the remand is deemed to have been correct, the remand determination, too, was sufficient, and was properly affirmed. In any event, argues the ITC, the issue is not moot—the requirement that a petition be filed "on behalf of" the domestic industry is not a continuing jurisdictional prerequisite for the ITC, but rather is merely a preliminary question left to Commerce's discretion.

### 1.

■ We first address the issue of mootness—whether the lack of any particular degree of continued industry support effectively terminates the viability of Commerce's or the ITC's continued actions in response to an initiating petition filed pursuant to 19 U.S.C. §§ 1671a(b) or 1673a(b) (1988).[5] This is a matter of statutory interpretation; we review it *de novo*.

The underlying question of Commerce's authority to determine when a proceeding is "on behalf of" an industry has been addressed in different contexts in two previous decisions of this court. In *Oregon Steel Mills v. United States*, 862 F.2d 1541, 7 Fed.Cir. (T) 22 (1988), we held that Commerce had authority to revoke a previously issued antidumping order if, in its discretion, it determined that there was a lack of industry support for the order. A Voluntary Restraint Agreement had been entered into by the various parties, and the domestic producers overwhelmingly preferred the Agreement to the Order.

Recently, in *Suramerica v. United States*, 966 F.2d 660 (Fed.Cir.1992), we held that Commerce had discretion to initiate an investigation in response to a petition from an interested party who alleged that it was on behalf of an industry, without necessarily determining first that it was affirmatively supported by a majority or some other specified number of the domestic industry. In that case we noted that the statute lends itself to several possible interpretations of what is meant by "on behalf of" an industry. On the facts before it, Commerce's understanding that the Act gave it such authority was within the range of permissible readings. *See Chevron U.S.A. Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). This conclusion was reinforced by

**5.** The 1988 amendments to these sections of the Code have no effect on the issues in this case.

Commerce's express ability, under the statute, to initiate an investigation on its own, independent of any petition, and independent of the support or opposition of the particular industry. *Suramerica,* at 666–67.[6]

Similarly, we find on the facts of this case that the decision by Commerce and the Commission to continue to pursue this matter to a conclusion was not dependent on first determining that a majority of the industry was or continued to be in support of the petition. To require that at each stage of the proceedings there must be a specified quantum of industry support—like a quorum call in a legislative body—would have the potential for constant interruption of the orderly proceedings provided by the statute, and would be an invitation to mischief. As in *Suramerica,* we find that Commerce's understanding here of its responsibilities under the Act is well within the range of permissible readings.[7] This appeal is not moot. We turn to the merits.

### 2.

■ This court reviews a decision of the Court of International Trade by applying for itself the statutory judicial review standard, 19 U.S.C. § 1516a(b)(1)[8], to the underlying ITC determination. *Olympic Adhesives, Inc., v. United States,* 899 F.2d 1565, 1571 (Fed.Cir.1990). When reviewing the decision to remand the initial ITC determination, this court must uphold the ITC determination, that there was no material injury caused or threatened by the accused imports, unless it is unsupported by substantial evidence on the record or otherwise not in accordance with law. *See* 19 U.S.C. §§ 1516a(b)(1)(B), 1516a(a)(2)(B)(ii).

■ Only after affirming the decision to remand do we reach the appeal from the Court of International Trade's affirmance

of the remand determination. The same standard of review applies. *See* 19 U.S.C. §§ 1516a(b)(1)(B), 1516a(a)(2)(B)(i).

### 3.

■ The Court of International Trade remanded the ITC's initial determination because Chairman Liebeler failed to examine the statutorily required factors regarding the impact of the imports on the domestic industry, outlined in 19 U.S.C. §§ 1677(7)(B)(iii) and 1677(7)(C)(iii). Section 1677(7)(B)(iii) mandates that, in making a determination regarding material injury to a domestic industry, the ITC "shall" consider, *inter alia,* the volume of the accused imports, the effect of those imports on prices in the United States for like products, and the impact of the accused imports on the domestic industry. Section 1677(7)(C)(iii) further details:

**Impact on affected industry.**—In examining the impact on the affected [domestic] industry, the Commission shall evaluate all relevant economic factors which have a bearing on the state of the industry, including, but not limited to—

(I) actual and potential decline in output, sales, market share, profits, productivity, return on investments, and utilization of capacity,

(II) factors affecting domestic prices, and

(III) actual and potential negative effects on cash flow, inventories, employment, wages, growth, ability to raise capital, and investment.

The ITC's majority report did not itself discuss any basis for the conclusion that causation was lacking. The *existence* of material injury, which *was* thoroughly discussed in the report, was addressed separately. Thus, in looking to verify that the conclusion regarding causation was ade-

**6.** Commerce's independent initiation of an investigation is dependent only on Commerce's determination, "from information available to it, that a formal investigation is warranted." 19 U.S.C. §§ 1671a(a), 1673a(a).

**7.** The questions addressed in this discussion have dealt with circumstances under which Commerce *may* initiate, continue, or terminate a proceeding in light of a petition filed "on

behalf of" an industry. We need not, and do not, address the question of under what circumstances Commerce *must* take such an action.

**8.** We refer explicitly to pre–1988 versions of the Code when the sub-section cited has changed in the interim. Otherwise, our references are to the 1988 edition.

quately based in fact and law, the Court of International Trade took the only avenue available—review of the Additional Views of each member of the majority.

Liebeler relied on her own five factor test[9] in lieu of, rather than in addition to, the factors required to be considered by 19 U.S.C. § 1677(7)(B) and (C). Liebeler stated in her Additional Views that her factors "incorporate both the statutory criteria and the guidance provided by the legislative history." *ITC Pub. 2033*, at 28.

The Court of International Trade's thorough examination led it to conclude that the five factor analysis does not comply with the statutory requirements. We agree. While the five factor test may be helpful, it cannot substitute for the Congressionally mandated 'minimum' analysis which must be undertaken. Section 1677(7)(B)(iii) and (C)(iii) list factors which the Commission "shall," not may, consider and evaluate in determining the effect on the domestic industry. Depending on the circumstances, the Commission may not need or be able to consider each listed factor; it may also consider other relevant factors, such as the intent of the importer or the effect on competition. However, the Commission cannot ignore or bypass the core factors directed by the statute.

■ Liebeler's conclusion regarding causation of material injury was therefore not in accordance with law. Those factors which Avesta alleges Liebeler adequately considered within the scope of the joint portion of the report are relevant almost exclusively to the existence, rather than the causation, of the material injury. The Court of International Trade properly remanded the ITC's initial determination for further evaluation in light of the statutory mandatory factors.

### 4.

■ The Court of International Trade held that the ITC's remand determination complied with the remand directions. That

Court was free, within reasonable limits, to set the parameters of the remand, which required an institutional response irrespective of flux in the Commission's membership. This seems to us particularly appropriate in a situation such as this, when the statute grants broad discretion to initiate and continue investigations on the basis of properly filed petitions, or even *sua sponte*. *See Suramerica*, at 665–67.

Avesta faces a very high hurdle when it tries to convince us that, despite the remanding Court's satisfaction, we must conclude that the ITC on remand acted outside the scope of the remand directions. That hurdle was not cleared. Remand was required, the remand directions were reasonable, and we are not convinced that the decision to accept the remand determination was, in any way, reversible error.

Avesta also argues that the remand determination did not adhere to the law of the case. This argument is inapposite to the present situation. The Court of International Trade did not, in the first instance, find that the determinations of Brunsdale and Rohr were correct. Rather, the Court found that the determinations were supported by substantial evidence and otherwise were in accord with law. This is not necessarily inconsistent with a holding that the opposite conclusion was also supported by substantial evidence and otherwise in accord with law.

The record before us reasonably supports either conclusion. Avesta has demonstrated no significant incongruity in the findings of fact or conclusions of law of the ITC and Court of International Trade. There is no 'law of the case' issue.

### 5.

■ The ITC's remand determination was that material injury is caused by the accused welded imports. Commissioner Lodwick simply readopted the views in his dissent from the ITC's initial determination leading to the contrary result. While those

---

**9.** Liebeler's five factor test "for examining what factual setting would merit an affirmative finding" weighs the strength of evidence of the following: 1) large and increasing market share, 2)

high dumping margins, 3) homogeneity of the products, 4) declining domestic prices, and 5) barriers to entry to other foreign producers. *ITC Pub. 2033*, at 29–31.

views may not contain a great deal of detail or depth, we agree with the Court of International Trade that Lodwick adequately discusses the requisite factors; his determination was based on substantial evidence and is otherwise in accordance with law.

Newquist's determination, too, was carefully reviewed by the Court of International Trade. We agree that this determination, which thoroughly addresses the statutory factors, is also supported by substantial evidence and is otherwise in accordance with law.

The deficiencies and errors alleged by Avesta do not establish the legal insufficiency of the evidence considered and discussed by Lodwick and Newquist. It is not for this court on appeal to reweigh the evidence or to reconsider questions of fact anew. The remand determination of the ITC was properly affirmed.

## CONCLUSION

The Court of International Trade correctly remanded the initial determination of the ITC, which was legally insufficient. The ITC fulfilled its obligations in reaching its remand determination; the Court of International Trade correctly affirmed that latter determination.

*AFFIRMED.*